21 P.3d 452

Leslie BLAIR and Laurie Bishop, Co–Trustees of the 1988 Hughes Family Trust, as Amended, Plaintiffs–Appellants,

v.

Lawrence N.C. ING, Defendant/Cross–Claim Defendant–Appellee,

and

Thomas Thayer, Defendant/Cross–Claimant–Appellee,

and

John Does 1–10, Jane Does 1–10, Doe Corporations 1–10, Doe Partnerships 1–10, Doe Non–Profit Organizations 1–10, and Doe Governmental Agencies 1–10, Defendants.

No. 22401.

Supreme Court of Hawai'i.

Feb. 27, 2001.

Reconsideration Denied April 24, 2001.

Bruce S. Ross, pro hac vice, (of Ross, Sacks & Glazier, LLP, Los Angeles, CA); also appearing Paul J. Barulich, pro hac vice (Redwood Shores, CA) and Arthur B. Reinwald (of Reinwald O'Connor & Playdon); on the briefs: George W. Playdon, Jr. and Jody Lynne Kellerman (of Reinwald O'Connor & Playdon), for plaintiffs-appellants.

Keith K. Hiraoka (Jodie D. Roeca, with him on the briefs, of Roeca, Louie & Hiraoka), for defendant/cross-claim defendant-appellee Ing.

Shelton G.W. Jim On (Henry F. Beerman, with him on the briefs, of Jim On & Beerman), for defendant/cross-claimant-appellee Thayer.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Intermediate Court of Appeals Chief Judge BURNS, in place of ACOBA, J., Recused.

Opinion of the Court by MOON, C.J.

Plaintiffs-appellants Leslie Blair and Laurie Bishop (the Appellants), as co-trustees and beneficiaries of the Hughes Family Trust [hereinafter, the Hughes Trust], brought legal malpractice claims against defendant/cross-claim defendant-appellee Lawrence N.C. Ing, a licensed attorney, and professional malpractice claims against defendant/cross-claimant-appellee Thomas Thayer, a certified public accountant, arising from services rendered in conjunction with the Hughes Trust. Ing moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 12(b)(6), in which Thayer joined.[1] Concluding that the Appellants lacked standing to assert their claim for relief, the second circuit court granted the motion in favor of Ing and Thayer.

The Appellants timely filed the present appeal and contend that the circuit court erred in granting the motion to dismiss because: (1) Ing and Thayer each owed duties to them as intended beneficiaries of the Hughes Trust; (2) the Appellants have standing to bring their amended complaint; and (3) their claims against Ing are not barred by the applicable statute of limitations, Hawai'i Revised Statutes (HRS) § 657–1(1) (1993). For the reasons set forth below, we hold that: (1) the Appellants have alleged facts sufficient to sustain a legal malpractice action in both tort and contract; (2) to determine the accrual of the statute of limitations, the "discovery rule" applies to legal malpractice actions arising from the drafting of a testamentary document; and (3) the Appellants' amended complaint does not sufficiently state a cause of action against Thayer for accountant malpractice. Accordingly, we vacate in part the circuit court's March 3, 1999 order dismissing the complaint as to Ing and remand this case for further proceedings consistent with this opinion. With respect to the dismissal of the claims against Thayer, we affirm.

## I. BACKGROUND

In 1988, Lloyd and Joan Hughes (collectively, the Hugheses), the Appellants' parents, retained Ing to create an estate plan for

---

1. HRCP Rule (12)(b) provides in relevant part:
 Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: ... (6) failure to state a claim upon which relief can be granted....

the disposition of their assets. In performing his duties, Ing drafted, among other things, a revocable living trust agreement, naming the Hugheses as trustees. The Hugheses executed their trust on July 5, 1988. The Hugheses subsequently executed an amendment to their trust on July 15, 1988, changing the name of their trust. Seven months later, on February 17, 1989, the Hugheses executed another amendment to their trust, granting one trustee the power to bind their trust. In all other respects, the Hughes Trust remained the same.

After Lloyd Hughes passed away on January 11, 1996, Joan Hughes, as executor of her husband's estate, retained the services of Thayer to prepare the necessary federal and state estate tax forms.

On or about June 14, 1997, Joan Hughes passed away. Under the terms of the Hughes Trust, the Appellants were the sole, named residual beneficiaries of the trust and became successor co-trustees. In carrying out their duties as co-trustees, the Appellants retained the services of different attorneys and accountants to review the Hugheses' testamentary documents. The new attorneys notified the Appellants that the trust document prepared by Ing and the tax return prepared by Thayer contained several costly "errors and omissions." Thus, on October 9, 1998, the Appellants filed a legal malpractice claim against Ing and an accountant malpractice claim against Thayer.

In support of their claims, the Appellants alleged that the Hughes Trust contains several provisions reflecting that the Hugheses intended to create an estate plan employing an "A–B trust plan";[2] specifically, the Hughes Trust contained several references to a bypass trust. The Appellants further alleged that, although the Hughes Trust creates a bypass trust, Ing negligently drafted the Hughes Trust by failing to "include a

funding formula by which the [bypass] trust could be created." The alleged failure to properly draft the trust instrument caused the Hugheses' entire estate to be subject to federal and state taxes upon the death of Joan Hughes.

The Appellants further alleged that Thayer was negligent in preparing and filing the estate tax returns because he failed to utilize several tax saving techniques, such as disclaimers and the unified tax credit. Thayer's alleged error also caused the Hugheses' entire estate to incur increased taxes, thereby diminishing the Appellants' inheritance. According to the Appellants, the alleged errors by Ing and/or Thayer resulted in approximately $200,000 in adverse tax consequences to the Hughes Trust.

Both the legal and accountant malpractice claims were based upon negligence theories. The complaint generally alleged that: (1) it was the Hugheses' intent to (a) minimize probate or other court procedures, (b) minimize state and federal estate taxation, and (c) transfer their assets to the Appellants with the least taxation possible; (2) Ing and Thayer, individually, owed the Appellants a duty of care as the intended beneficiaries of the Hughes Trust; (3) Ing and Thayer failed to exercise reasonable care in fulfilling their duties; (4) Ing's and Thayer's negligence were legal causes of the adverse tax consequences that diminished the Appellants' inheritance; and (5) the Appellants' injury was reasonably foreseeable. Subsequently, by leave of the circuit court, the Appellants filed an amended complaint asserting the same factual allegations against Ing and Thayer, but adding a breach of contract theory based upon third party beneficiary principles [hereinafter "third party beneficiary theory"].[3] In sum, the crux of the Appellants' claims is that the conduct of Ing and Thayer caused the Hughes Trust to pay a total of $200,000

---

2. Simply stated, the A–B trust plan is an estate planning device generally employed by married couples using a "bypass trust" to shelter assets from taxation, equivalent in value to the federal unified credit exemption, in the estate of the first spouse to die. The A–B trust plan also utilizes the federal marital deduction in the estate of the first spouse to die by making a bequest to or creating a marital trust for the surviving spouse.

3. Because the distinction between the original complaint and the amended complaint is immaterial to the resolution of this appeal, all subsequent references to "the complaint" are to the amended complaint, unless otherwise noted.

in adverse estate taxes, thereby reducing the Appellants' inheritance.

Ing filed a motion to dismiss the complaint, in which Thayer joined [hereinafter, the motion to dismiss]. On February 10, 1999, the circuit court granted the motion to dismiss, ruling that the Appellants lacked standing to bring a legal malpractice action against Ing, who was their parents' attorney. In the alternative, the circuit court concluded that, because the trust did not provide on its face any intention to minimize taxes or maximize the Appellants' inheritance, Ing did not owe a duty to the Appellants under either legal theory. Therefore, the circuit court concluded that the Appellants lacked standing to bring their complaint as third-party beneficiaries or trustees and dismissed the claims against Ing. Moreover, the court concluded that, even assuming that the Appellants had standing, their legal malpractice action was barred by the applicable six-year statute of limitations based on its finding that the limitations period began to accrue on the date the Hughes Trust was drafted.

In dismissing the claims against Thayer, the circuit court found that the requirements of the Restatement (Second) of Torts § 552, entitled "negligent misrepresentation," had not been met because the Appellants were merely "incidental," not "intended," beneficiaries of the agreement between Thayer and Joan Hughes. Accordingly, the circuit court also dismissed the complaint against Thayer.

The Appellants timely filed the present appeal.

## II. *STANDARDS OF REVIEW*

### A. *Motion to Dismiss*

■ It is well settled that:

A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his or her claim that would entitle him or her to relief. *Ravelo v. County of Hawaii,* 66 Haw. 194, 198, 658 P.2d 883, 886 (1983) (quoting *Midkiff [v. Castle & Cooke, Inc.]*, 45 Haw. [409,] 414, 368 P.2d [887,]

890 [(1962)]); *Marsland v. Pang,* 5 Haw. App. 463, 474, 701 P.2d 175, 185–86, *cert. denied,* 67 Haw. 686, 744 P.2d 781 (1985). We must therefore view a plaintiff's complaint in a light most favorable to him or her in order to determine whether the allegations contained therein could warrant relief under any alternative theory. *Ravelo,* 66 Haw. at 199, 658 P.2d at 886. For this reason, in reviewing [a] circuit court's order dismissing [a] complaint ... our consideration is strictly limited to the allegations of the complaint, and we must deem those allegations to be true. *Au [v. Au]*, 63 Haw. [210,] 214, 626 P.2d [173,] 177 (1981).

*Baehr v. Lewin,* 74 Haw. 530, 545, 852 P.2d 44, 52, *reconsideration granted in part and denied in part,* 74 Haw. 650, 875 P.2d 225 (1993).

*Touchette v. Ganal,* 82 Hawai'i 293, 297–98, 922 P.2d 347, 351–52 (1996) (brackets and ellipsis in the original).

### B. *Summary Judgment* [4]

■ Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. [*Amfac, Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 104, 839 P.2d 10, 22, reconsideration denied, 74 Haw. 650, 843 P.2d 144 (1992)] (citation and internal quotation marks omitted); *see* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.,* 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Foytik v. Chandler,* 88 Hawai'i 307, 314, 966 P.2d 619, 626 (1998) (some brackets added and some deleted) (emphasis omitted) (citation omitted).

---

4. *See infra* note 18.

## C. *Duty of Care*

■ This court addresses whether a defendant owes a duty of care to a particular plaintiff as a question of law under the right/wrong standard. *Lee v. Corregedore*, 83 Hawai'i 154, 158, 925 P.2d 324, 328 (1996).

## D. *Statutory Interpretation*

■ The interpretation of a statute is reviewed de novo by this court. *State v. Bautista*, 86 Hawai'i 207, 209, 948 P.2d 1048, 1050[ ] (1997) (citing *Shimabuku v. Montgomery Elevator Co.*, 79 Hawai'i 352, 357, 903 P.2d 48, 52 (1995)). Conclusions of law are not binding upon this court and are subject to the right/wrong standard of review. *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997) (citing *State v. Tuipuapua*, 83 Hawai'i 141, 145, 925 P.2d 311, 315 (1996)).

*LeMay v. Leander*, 92 Hawai'i 614, 620, 994 P.2d 546, 552 (2000).

## III. *DISCUSSION*

■ As an initial matter, we note that, in the circuit court, the Appellants argued that they have standing to bring the claims against both Ing and Thayer as successor co-trustees of the Hughes Trust. On appeal, the Appellants' briefs also allege, in conclusory fashion, that they have standing as co-trustees of the trust to bring their claims against Ing and Thayer. However, the Appellants have not cited to any legal authority or presented any argument in support of this contention. Indeed, the Appellants' arguments in their briefs focus entirely upon whether a non-client beneficiary may bring a legal malpractice suit against Ing and an accountant malpractice suit against Thayer. Thus, although argued in the circuit court, the Appellants have waived their argument that, as co-trustees of the Hughes Trust, they may maintain a cause of action against Ing and Thayer. *See* HRAP Rule 28(b)(4) (1999); *see also Robert's Hawaii School Bus, Inc. v. Laupahoehoe Transp. Co., Inc.*, 91 Hawai'i 224, 231 n. 4, 982 P.2d 853, 860 n. 4 (1999) (noting that, because the appellants violated Hawai'i Rules of Appellate Procedure by failing to, among other things, present any argument or analysis on their alleged points of error, the issues will not be addressed on appeal) (citation omitted); *Dement v. Atkins & Ash*, 2 Haw.App. 324, 631 P.2d 606, 609 (1981) (noting that an argument not advanced in appellate briefs or at oral argument is deemed waived) (citation omitted). Accordingly, our discussion is limited to whether the Appellants, as non-client beneficiaries, have standing to bring legal and accountant malpractice actions against Ing and Thayer, respectively.

## A. *Standing in Legal Malpractice*

Over a century ago, the United States Supreme Court held that a third party not in privity of contract with an attorney may not maintain a legal malpractice action against an attorney for negligence absent fraud or collusion. *See National Sav. Bank v. Ward*, 100 U.S. 195, 205–206, 25 L.Ed. 621 (1879). Although the strict privity requirement remains prevalent in many factual circumstances of legal malpractice, the trend in estate planning is to allow a legal malpractice cause of action brought by non-clients. *See generally* 1 R. Mallen and J. Smith, Legal Malpractice § 7.12 (4th ed.1996) [hereinafter, Legal Malpractice] (noting that, with rare exception, "modern decisions have favored expanding privity beyond the confines of the attorney-client relationship only if the plaintiff was intended to be the beneficiary of the lawyer's retention").

Hawaii's case law is silent as to whether privity of contract precludes non-clients from bringing a legal malpractice action against an attorney arising from estate planning. The case law outside Hawai'i addressing the liability of an attorney to a non-client in connection with estate planning generally employs one or two of three approaches: (1) strict privity theory; (2) "balancing factors method" under a negligence theory; and (3) breach of contract theory as a third-party beneficiary. Currently, the majority of jurisdictions have weakened the strict privity rule in legal malpractice actions and have adopted varying, expanded concepts of privity, *see generally* 4 Legal Malpractice § 31.4, while a handful of states adhere to the strict privity theory, *see, e.g., Barcelo v. Elliott*, 923 S.W.2d 575, 580 (Tex.1996).

### 1. Jurisdictions Retaining Strict Privity

In those jurisdictions adhering to the strict privity rule, courts have noted several policy reasons for refusing to grant standing to a non-client intended beneficiary regardless of whether a malpractice action is brought under contract or tort theories. *See, e.g., Lilyhorn v. Dier*, 214 Neb. 728, 335 N.W.2d 554, 555 (1983) (noting that "the duty to exercise reasonable care and skill which a lawyer owes his client ordinarily does not extend to third parties"). First, without the strict privity rule, some jurisdictions reason that "clients would lose control over the attorney-client relationship, and attorneys would be subject to almost unlimited liability." *Elliott*, 923 S.W.2d at 577 (citation omitted). Second, strict privity jurisdictions believe that allowing a broad cause of action in favor of beneficiaries would create a conflict of interest between an attorney's client and third-party beneficiaries during the estate planning process, thereby limiting the attorney's ability to zealously represent his or her client. *See id.* at 578. Lastly, strict privity jurisdictions fear that suits by disappointed beneficiaries would cast doubt on the deceased testator's intentions.[5] *See id.*

### 2. Jurisdictions That Have Eased The Privity Requirement

Despite the foregoing reasons for adhering to the strict privity rule, many jurisdictions have either modified or created an exception to the strict privity requirement and, thus, have allowed a legal malpractice action by a non-client against an attorney based either on a negligence or a third party beneficiary theory or both. *See generally* 4 Legal Malpractice § 31.4.

#### a. "Balancing Factors" Approach Under A Negligence Theory

The policy reasons given to modify or abolish the strict privity requirement in the context of negligence claims focus on whether an attorney owes a duty to the beneficiary of an estate. In *Lucas v. Hamm*, 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961), *cert. denied*, 368 U.S. 987, 82 S.Ct. 603, 7 L.Ed.2d 525 (1962), the California Supreme Court addressed whether a legal malpractice action against an attorney by his client's trust beneficiaries could be maintained for negligently drafting a "pour-over will."[6] In its analysis, the *Lucas* court stated that whether a particular defendant can be liable to a third person not in privity is a matter of public policy, requiring the balancing of several factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to him; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the policy of preventing future harm; and (6) whether imposing liability placed an undue burden upon the legal profession. *Lucas*, 15 Cal.Rptr. 821, 364 P.2d at 687–88 (citation omitted); *see also Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 50, *clarified by*, 247 Kan. 699, 803 P.2d 205 (1990) (holding that whether an attorney may be liable to a non-client would be determined by the six-factor balancing test set out in *Lucas*); *Donahue v.*

---

5. We note that even those jurisdictions that have allowed malpractice suits by non-client beneficiaries have also relied upon one or more of the foregoing policy considerations to reject a claim for relief against an attorney. *See, e.g., Lewis v. Star Bank*, 90 Ohio App.3d 709, 630 N.E.2d 418, 421 (1993) (dismissing a legal malpractice claim brought by the client's beneficiary against the law firm that drafted an inter vivos will based upon the law firm's sole obligation of undivided loyalty to the client, not plaintiff); *Schreiner v. Scoville*, 410 N.W.2d 679, 683 (Iowa 1987) (indicating that disappointed beneficiaries may seek to introduce extrinsic evidence to change the intent of a testator as evidenced by the testamentary document in contravention of the prohibition against use of extrinsic evidence under their statute of wills); *Espinosa v. Sparber, Shevin*,

*Shapo, Rosen, and Heilbronner*, 612 So.2d 1378, 1380 (Fla.1993) (observing that extrinsic evidence would increase the risk of misinterpreting the document, as well as the fabrication of false evidence to change the testator's intent); *Noble v. Bruce*, 349 Md. 730, 709 A.2d 1264, 1278 (1998) (concluding that the strict privity rule protects attorney-client confidentiality by not forcing an attorney into a position that requires him or her to reveal client confidences, which a client did not want revealed, during a legal malpractice action by a non-client beneficiary).

6. A "pour-over will" generally refers to a will that bequeaths a testator's property to an existing trust.

*Shughart, Thomson & Kilroy, P.C.,* 900 S.W.2d 624, 629 (Mo.1995) (en banc) (holding that the issue whether an attorney owes a legal duty to non-clients is determined by weighing the *Lucas* factors under a "modified" balancing test).

In concluding that public policy favored a malpractice cause of action against the drafting attorney, the *Lucas* court stated:

> [O]ne of the main purposes which the transaction between [attorney] and the testator intended to accomplish was to provide for the transfer of property to [the beneficiaries]; the damage to [the beneficiaries] in the event of invalidity of the bequest was clearly foreseeable; it became certain, upon the death of the testator without change of the will, that [the beneficiaries] would have received the intended benefits but for the asserted negligence of [the attorney]; and if persons such as [the beneficiaries] are not permitted to recover for the loss resulting from negligence of the draftsman, no one would be able to do so, and the policy of prevent[ing] future harm would be impaired.

*Lucas,* 15 Cal.Rptr. 821, 364 P.2d at 688.

Subsequently, in *Bucquet v. Livingston,* 57 Cal.App.3d 914, 129 Cal.Rptr. 514 (Cal.Ct. App.1976), the California Court of Appeals held that public policy favored a malpractice cause of action against an attorney who failed to advise his client of adverse tax consequences for an inter vivos trust and, thus, could be held liable by the trust beneficiaries if the testamentary intent is frustrated due to the attorney's professional negligence and the designated beneficiaries lose their legacy as a direct result of such negligence. *Id.* at 921, 129 Cal.Rptr. at 518. In so holding, the court in *Bucquet* stated that the

> recognition of the existence of a cause of action in the instant case also advances the judicially approved policy of preventing future harm and the standards of the legal profession, a matter that has been of great concern in recent years, both to the general public and to the profession, as well as the courts.... Arguably, the interests of a beneficiary are even greater than those of the testator or settlor. After the death of the testator or settlor, a failure in the

scheme of disposition works no practical effect except to deprive his intended beneficiaries of the intended bequest. The executor of an estate has no standing to bring an action for the amount of the bequest against an attorney who negligently prepared the estate plan since, in the normal case, the estate is not injured by such negligence, except to the extent of fees paid; only the beneficiaries suffer the real loss. Thus, the fact that [client's] estate was not a party is of no significance here. Unless the beneficiaries can recover against the attorney, no one could do so and the social policy of preventing future harm would be frustrated.

*Id.* at 925–26, 129 Cal.Rptr. at 521.

### b. *Third Party Beneficiary Theory of Contract*

In addition to a negligence theory, a third party beneficiary theory is commonly advanced to establish liability to a non-client who is not in strict privity with an attorney. *See generally,* 4 Legal Malpractice § 31.4. This approach focuses upon whether the primary purpose of the client-attorney relationship was to benefit the non-client. *Donahue,* 900 S.W.2d at 628 (holding, *inter alia,* that, as an exception to the general rule that an attorney is only liable to his client for negligence, a non-client may maintain a legal malpractice action based upon a third party beneficiary claim) (citations omitted). "The essence of a third-party beneficiary's claim is that others have agreed between themselves to bestow a benefit upon the third party but one of the parties to the agreement fails to uphold his portion of the bargain." *Copenhaver v. Rogers,* 238 Va. 361, 384 S.E.2d 593, 596 (1989). Thus, "[t]he third party beneficiary approach focuses the existence of a duty entirely on whether the plaintiff was the person intended to be benefitted by the legal services and does not extend to those incidentally deriving an indirect benefit." *Donahue,* 900 S.W.2d at 628. In other words, the non-client must have been an intended beneficiary, not merely an incidental beneficiary.

In *Guy v. Liederbach,* 501 Pa. 47, 459 A.2d 744 (1983), the Pennsylvania Supreme Court

articulated a two-part test for determining whether a person is an intended third party beneficiary under the Restatement (Second) of Contracts § 302. In part one of the test, the trial court possesses the discretion to confer standing under a third party beneficiary theory by determining whether "the recognition of the beneficiary's right [is] 'appropriate to effectuate the intention of the parties[.]' " *Id.* at 751. Under part two, the performance must " 'satisfy an obligation of the promisee to pay money to the beneficiary' or 'the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.' " *Id.*

The court in *Guy* applied this test to beneficiaries under a will as follows:

The underlying contract is that between the testator and the attorney for the drafting of a will. The will, providing for one or more named beneficiaries, clearly manifests the intent of the testator to benefit the legatee. Under Restatement (Second) § 302(1), the recognition of the "right to performance in the beneficiary" would be "appropriate to effectuate the intention of the parties" since the estate either cannot or will not bring suit. Since only named beneficiaries can bring suit, they meet the first step standing requirement of § 302. Being named beneficiaries of the will, the legatees are intended, rather than incidental, beneficiaries who would be § 302(1)(b) beneficiaries for whom "the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." In the case of a testator-attorney contract, the attorney is the promisor, promising to draft a will which carries out the testator's intention to benefit the legatees. The testator is the promisee, who intends that the named beneficiaries have the benefit of the attorney's promised performance. The circum-

stances which clearly indicate the testator's intent to benefit a named legatee are his arrangements with the attorney and the text of his will.

459 A.2d at 751–52 (footnote omitted).[7]

### c. *Negligence versus Third Party Beneficiary Theory*

Although many jurisdictions allow a non-client to bring a legal malpractice action in the context of estate planning, the jurisdictions are split as to which legal theory should apply to allow the claim. We are aware of only one jurisdiction that has specifically allowed a claim for relief sounding in negligence, but, at the same time, has denied a claim based on a third party beneficiary theory. *See Donahue*, 900 S.W.2d at 629 (holding that a claim for relief is limited to negligence because the breach of duty is based upon negligent performance of duty, not breach of contract). In rejecting the third party beneficiary theory, the Missouri Supreme Court stated that,

[w]hile one element of one of their malpractice claims requires a showing that [the client] intended to benefit plaintiffs, a careful reading of the pleadings discloses that liability hinges not on contract but on an attorney's alleged negligence toward a client. The duty allegedly breached was not the violation of the contract . . ., but that [the attorney] was negligent in performing professional obligations to [the client]. Plaintiffs' third party beneficiary claim is merely one of attorney malpractice, clothed in a contract theory.

*Id.* at 629. *Compare Heyer v. Flaig*, 70 Cal.2d 223, 74 Cal.Rptr. 225, 449 P.2d 161 (1969) (superceded by statute, *see* Cal.Civ. Proc.Code § 340.6 (West 1982), as recognized by, *Laird v. Blacker*, 2 Cal.4th 606, 7 Cal. Rptr.2d 550, 828 P.2d 691, 693 (1992)) (noting

7. Although the plaintiff in *Guy* was named in the will, the court noted that an unnamed beneficiary may be "intended" and permitted to bring a legal malpractice action under certain circumstances:

There are, of course, beneficiaries under a will who are not named, and who may be either intended or unintended beneficiaries. The standing requirement may or may not be met by non-named but intended beneficiaries: the

trial court must determine whether it would be "appropriate" and whether the circumstances indicate an intent to benefit non-named beneficiaries. It follows that unintended third party beneficiaries could not bring suit under [Restatement (Second) ] § 302 against the drafting attorney. In making that determination the trial court should be certain the intent is clear. *Guy*, 459 A.2d at 752 n. 8.

that, even though California recognizes both negligence and third party beneficiary claims, recovery based upon a third party beneficiary claim by a non-client is "conceptually superfluous [to a tort claim] since the crux of the action must lie in tort in any case; there can be no recovery without negligence"); Gerald P. Johnston, *Legal Malpractice in Estate Planning—Perilous Times Ahead for the Practitioner*, 67 Iowa L.Rev. 629, 629–30 n. 1 (1982) (noting that, although a legal malpractice action may be based on two separate legal theories, "the precise [legal] theory on which a legal malpractice claim is posited is largely irrelevant, for in either instance a lawyer is required to exercise due care in representing clients consistent with a lawyer's training and profession").

On the other hand, we are aware of only two jurisdictions that have specifically limited a non-client's cause of action to a third party beneficiary claim against a testator's or settlor's attorney. *See Guy*, 459 A.2d at 746–47; *Noble v. Bruce*, 349 Md. 730, 709 A.2d 1264, 1275–76 (1998).[8] In *Guy*, a plurality opinion, the Pennsylvania Supreme Court deemed it appropriate to grant standing under Restatement (Second) of Contracts § 302 (1981) to a narrow class of third party beneficiaries where the intent to benefit was clear and the promisee (*i.e.*, the testator) was unable to enforce the contract. 459 A.2d at 751. However, the court in *Guy* specifically rejected the idea of a malpractice action by a third party under tort principles, noting that important policies underlying the privity requirement and the dangers of adopting negligence concepts of duty—analyzed in terms of scope of the risk or foreseeability—precluded a negligence claim for professional malpractice by a non-client. *Id.* at 750; *see also*

*Noble v. Bruce*, 709 A.2d at 1271 (criticizing the balancing factors approach as being too broad). Citing the line of California cases following *Lucas*, the Pennsylvania Supreme Court emphasized the "unworkability" of a tort based action by non-clients which led to "ad hoc determinations and inconsistent results" under a complicated, case-by-case six part balancing test. *Guy*, 459 A.2d at 749; *Noble*, 709 A.2d at 1271 (agreeing with the reasoning in *Guy* and, therefore, declining to apply the balancing factors approach in that case). Moreover, the Pennsylvania Supreme Court believed that the inability to distinguish between a negligence claim and third party beneficiary

> is based on a common confusion of negligence doctrines relating to standard of care with those relating to scope of the risk, i.e., the class of persons to whom a duty is owed, analyzed in negligence in terms of foreseeability. Thus, although a plaintiff on a third party beneficiary theory in contract may in some cases have to show a deviation from the standard of care, as in negligence, to establish breach, the class of persons to whom the defendant may be liable is restricted by principles of contract law, not negligence principles relating to foreseeability or scope of risk.

*Guy*, 459 A.2d at 752 (limiting claim to third party beneficiary theory).

Still, several jurisdictions recognizing a malpractice action by a non-client allow the action to proceed on a negligence theory, in addition to a third party beneficiary theory. *See, e.g., Lucas*, 15 Cal.Rptr. 821, 364 P.2d at 688 n. 2, 689; *Hale v. Groce*, 304 Or. 281, 744 P.2d 1289, 1290 (1987) (holding that an intended will beneficiary may enforce an attorney's contractual duty to his client to include

**8.** Although the Florida Supreme Court has specifically stated that a legal malpractice action by a non-client is based upon a third party beneficiary theory, rather than a negligence theory, *see, e.g., Espinosa v. Sparber, Shevin, Shapo, Rosen and Heilbronner*, 612 So.2d 1378, 1380 (Fla. 1993), other Florida case law, cited with approval in *Espinosa*, suggests otherwise. In *McAbee v. Edwards*, 340 So.2d 1167 (Fla.Dist.Ct.App.1976), one of Florida's earliest cases leading to the development of an exception to the privity requirement, the court stated that whether an at-

torney may be liable to a non-client was a matter of policy requiring an analysis of the *Lucas* balancing factors. *Id.* at 1170. Moreover, another Florida District Court of Appeals, in *Lorraine v. Grover, Ciment, Weinstein & Stauber*, 467 So.2d 315 (Fla.Dist.Ct.App.1985), noted that, "[al]though it is generally stated that the action can be grounded in theories of either tort (negligence) or contract (third-party beneficiary), the contractual theory is 'conceptually superfluous since the crux of the action must lie in tort in any case; there can be no recovery without negligence.'" *Id.* at 317 (citations omitted).

the beneficiary in the client's will and that the same contract also creates a legal duty of care to the beneficiary, the negligent performance of which may give rise to a negligence claim); *Schreiner v. Scoville*, 410 N.W.2d 679, 682 (Iowa 1987); *Ogle v. Fuiten*, 102 Ill.2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224, 227 (1984); *Simpson v. Calivas*, 139 N.H. 1, 650 A.2d 318, 322–23 (1994); *Mieras v. De-Bona*, 452 Mich. 278, 550 N.W.2d 202 (1996) (plurality opinion).

In our view, the Appellants' negligence and third party beneficiary claims are not irreconcilable even though each is grounded in a distinct theory of recovery. As the Missouri Supreme Court observed in *Donahue:*

> The first factor of the balancing test addresses the extent to which the transaction was intended to benefit the plaintiff and bears a remarkable resemblance to the third party beneficiary theory. The question of whether the client had a specific intent to benefit the plaintiff plays an important role in determining if a legal duty exists under the balancing of factors test.

900 S.W.2d at 628. Maryland, which only allows a third party beneficiary claim, recognizes that

> "the scope of duty concept in negligence actions may be analogized to the third party beneficiary concept in the context of attorney malpractice cases." Thus, regardless of whether a tort theory or a contract theory is pled, a plaintiff in an attorney malpractice action must first "allege and prove the existence of a duty between the plaintiff and the defendant."

*Noble*, 709 A.2d at 1272 (citation omitted). Although this court has never specifically determined that legal malpractice is actionable under both tort and contract theories, we have generally characterized legal malpractice actions brought by clients as "hybrids of tort and contract[.]" *Higa v. Mirikitani*, 55 Haw. 167, 173, 517 P.2d 1, 5 (1973) (holding that the statute of limitations applicable to contract claims, HRS § 657–1(1), governs legal malpractice claims).

The Pennsylvania Supreme Court's distinction between the two legal theories appears to be heavily based upon its policy of limiting the potential liability of an attorney to a non-client by restricting such actions to a third party beneficiary theory that limits damages to the expectancy of the non-client beneficiary. *Guy*, 459 A.2d at 756. *See generally* Martin D. Begleiter, *Attorney Malpractice in Estate Planning—You've Got to Know When to Hold Up, Know When to Fold Up*, 38 U.Kan.L.Rev. 193, 255 (1989) (discussing the tension between expanding the scope of malpractice liability to a non-client under a broader rule of negligence law and limiting that liability to specific situations under a third party beneficiary theory). Although we are cognizant of the need to balance the liability placed upon the legal profession against the need to provide a remedy to an intended beneficiary, we believe that the remedies available in tort that are generally over and above those available in contract, *e.g.*, punitive damages and emotional distress, do not place an unreasonable burden upon the legal profession. Established tort principles appropriately limit the recovery available in a legal malpractice action brought by non-clients under a negligence theory. For example, punitive damages are generally unavailable absent wanton, malicious, or fraudulent conduct. *See, e.g., Masaki v. General Motors Corp.*, 71 Haw. 1, 11, 780 P.2d 566, 572 (1989) ("[Punitive] damages may be awarded in cases where the defendant 'has acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations'; or where there has been 'some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.' ") (citation omitted); *Goo v. Continental Cas. Co.*, 52 Haw. 235, 239, 473 P.2d 563, 566 (1970) (concluding that, at trial, appellant had failed to adduce sufficient evidence that appellees acted maliciously, oppressively, wantonly, or fraudulently for the question of punitive damages to be submitted to the jury). In a case of legal malpractice in the estate planning context, it is difficult to conceive of circumstances where an attorney would be sued based on malicious or wanton drafting of a testamentary document. Nevertheless, if the requisite facts were properly established, an instruction on punitive damages might be warranted. Likewise, dam-

ages for negligent infliction of emotional distress are generally unavailable for purely economic losses. *See* HRS § 663–8.9 (1993).[9] Consequently, the damages for a legal malpractice claim arising in the estate planning context based upon negligence will rarely, if ever, include damages other than consequential damages.

■ Therefore, we hold that, where the relationship between an attorney and a non-client is such that we would recognize a duty of care, the non-client may proceed under either negligence or contract theories of recovery.[10]

### 3. Standing to Assert Legal Malpractice in the Instant Case

■ We now address whether, in the present case, the Appellants have alleged facts sufficient to show that, if proven, Ing owed a duty of care to them. The Appellants contend that, as the intended beneficiaries of the Hughes Trust, Ing owes them a duty of care. Ing, however, contends that, because the Hughes Trust is a valid trust, a cause of action should not be recognized under the facts of this case as a matter of policy.

■ We observe that "[t]he general rule with respect to the liability of an attorney for failure to properly perform his duties to his client is that the attorney, by accepting to give legal advice or to render other legal services, impliedly agrees to use such skill, prudence, and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the tasks which they undertake." *Lucas*, 15 Cal.Rptr. 821, 364 P.2d at 689 (holding that an attorney who drafted a will that violated the rule

against perpetuities was not liable to non-client beneficiaries under either a negligence or third party beneficiary theory). An attorney cannot be held liable for every mistake made in his or her practice, especially for an error as to a question of law on which reasonable doubt may be entertained by well-informed lawyers. *See id; see also Bucquet v. Livingston*, 57 Cal.App.3d 914, 921, 129 Cal.Rptr. 514, 518 (Cal.Ct.App.1976) (noting that "[l]iability to testamentary beneficiaries not in privity is not ... automatic"). Such a blanket duty would possibly "amount to a requirement to draft litigation proof legal documents. This unlimited liability ... would result in a speculative and almost intolerable burden on the legal profession...." *Ventura County Humane Society for Prevention of Cruelty to Children and Animals, Inc. v. Holloway*, 40 Cal.App.3d 897, 905, 115 Cal.Rptr. 464, 469 (1974).

Regarding the imposition of a duty of care, this court has noted generally that:

> In considering whether to impose a duty of reasonable care on a defendant, we recognize that duty is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection. *Waugh v. University of Hawaii*, 63 Haw. 117, 135, 621 P.2d 957, 970 (1980); *Kelley v. Kokua Sales & Supply, Ltd.*, 56 Haw. 204, 207, 532 P.2d 673, 675 (1975). Legal duties are not discoverable facts of nature, but merely conclusory expressions that, in cases of a particular type, liability should be imposed for damage done. *Id.* (quoting *Tarasoff [v. Regents of the Univ. of Califor-*

---

9. HRS § 663–8.9 provides
 (a) No party shall be liable for the negligent infliction of serious emotional distress or disturbance if the distress or disturbance arises solely out of damage to property or material objects.
 (b) This section shall not apply if the serious emotional distress or disturbance results in physical injury to or mental illness of the person who experiences the emotional distress or disturbance.

10. Although we note that negligence and third party beneficiary theories intersect one another, we emphasize that the two alternative legal theories in this case are separate and distinct.

Therefore, the present case does not implicate the considerations noted in *Francis v. Lee Enterprises, Inc.*, 89 Hawai'i 234, 971 P.2d 707 (1999), wherein we overruled prior decisions allowing a tortious breach of contract action because that cause of action unnecessarily blurred the distinction between discrete theories of tort and contract law. *Id.* at 239, 971 P.2d at 712. We, therefore, point out that a plaintiff's recovery, if any, is based upon the cause of action advanced and proved at trial. Under no circumstances, however, is a plaintiff entitled to double recovery where both legal theories are advanced and proved.

nial], ... 17 Cal.3d 425, 131 Cal.Rptr. 14, 551 P.2d [334,] 342 [(Cal.1976)]). In determining whether or not a duty is owed, we must weigh the considerations of policy which favor the appellants' recovery against those which favor limiting the appellees' liability. *Waugh*, 63 Haw. at 135, 621 P.2d at 970; *Kelley*, 56 Haw. at 207, 532 P.2d at 675. The question of whether one owes a duty to another must be decided on a case-by-case basis. *Waugh*, 63 Haw. at 135, 621 P.2d at 970. However, we are reluctant to impose a new duty upon members of our society without any logical, sound, and compelling reasons taking into consideration the social and human relationships of our society. *Birmingham v. Fodor's Travel Publications, Inc.*, 73 Haw. 359, 370–71, 833 P.2d 70, 76 (1992) (holding that "a publisher of a work of general circulation, that neither authors nor expressly guarantees the contents of its publication, has no duty to warn the reading public of the accuracy of the contents of its publication"); *Johnston v. KFC Nat'l Management Co.*, 71 Haw. 229, 232–33, 788 P.2d 159, 161 (1990) (declining to impose a duty upon non-commercial suppliers of alcohol, i.e., social hosts, to protect third parties from risk of injuries that might be caused by adults who consume the social hosts' alcohol).

*Lee v. Corregedore*, 83 Hawai'i 154, 166, 925 P.2d 324, 336 (1996). In addition to the foregoing general principles, this court regarded several factors espoused in *Nally v. Grace Community Church*, 47 Cal.3d 278, 253 Cal.Rptr. 97, 763 P.2d 948 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644, 104 L.Ed.2d 159 (1989), as relevant in determining whether to impose a duty in *Lee:*

> whether a special relationship exists ..., the foreseeability of harm to the injured party, the degree of certainty that the injured party suffered injury, the closeness of the connection between the defendants' conduct and the injury suffered, the moral blame attached to the defendants, the policy of preventing harm, the extent of the burden to the defendants and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and

prevalence of insurance for the risk involved.

*Lee*, 83 Hawai'i at 164, 925 P.2d at 334, 336.

■ Analogously, whether to impose a duty upon an attorney to a non-client for malpractice requires the balancing of several factors in light of the policies favoring recovery versus those limiting liability. As previously noted, the *Lucas* court promulgated a six-factor test, analogous to that used in *Lee*, to address this particular issue. *Lucas*, 15 Cal.Rptr. 821, 364 P.2d at 687–88 (citation omitted). Inasmuch as the *Lucas* test is analogous to the test relied upon in *Lee*, we adopt the *Lucas* factors as relevant to the determination whether to impose a duty upon attorneys to non-client beneficiaries in the estate planning context.

Applying the foregoing *Lucas* factors in the present case, the Appellants argue that: (1) because one of the primary purposes in drafting the Hughes Trust using an A–B trust plan was to distribute or transfer the Hugheses' assets to the Appellants with the least possible tax consequences, the Hughes Trust was intended to affect the Appellants; (2) in drafting the Hughes Trust, it was foreseeable that the Appellants, the intended beneficiaries, would suffer damage in the form of a diminished inheritance if the Hugheses' property was not properly disposed of using a bypass trust in accordance with the Hugheses' alleged intent; (3) but for Ing's alleged failure to include a provision in the trust plan to fund the bypass trust, which caused the Hugheses' entire estate to be subject to taxation, they would have received the intended benefits, *i.e.*, a greater inheritance; and (4) the policy of preventing future harm caused by negligent drafting of testamentary documents in estate planning would be impaired if the Appellants were unable to recover for the loss resulting from Ing's alleged failure to fulfill the Hugheses' intent, notwithstanding the fact that the Hughes Trust was not declared invalid.

Ing, however, contends that the imposition of a legal duty will create unlimited liability to an unlimited class of individuals and will unduly burden the legal profession. In our view, although the imposition of a duty may

possibly subject an attorney to greater liability, the potential liability is properly limited by the narrow application of the *Lucas* balancing test under a claim of negligence and third party beneficiary principles under a contract claim. *See Donahue,* 900 S.W.2d at 628. For example, a benefit that is merely incidentally conferred upon the beneficiary will not meet the first factor of the *Lucas* balancing test or the third party beneficiary principle that the contract be entered into with the intent to benefit the non-client. *See id.* (noting that "the predominant inquiry has generally involved the criterion of whether the principal purpose of the attorney's retention to provide legal services was for the specific benefit of the plaintiff") (citation omitted). The class of individuals who may bring a malpractice action is limited to a client's intended beneficiaries, provided no other remedy exists to prevent future harm. Although previously noted, we emphasize that our holding today does not create a blanket duty of care to all non-client beneficiaries in every case.

██ Ing further contends that the circuit court did not abuse its discretion in dismissing Appellants' amended complaint because the Hughes Trust had never been challenged. By allowing the present lawsuit to proceed, Ing contends that a conflict of interest would arise if he were held liable to the Appellants because the Appellants' interests may be adverse to that of his clients', *i.e.,* the Hugheses' interests. Ing further contends that allowing a cause of action under these circumstances requires that he disclose client confidences in contravention of Hawai'i Rules of Evidence (HRE) Rule 503(d)(4) and Hawaii Rules of Professional Conduct Rule 1.6(c)(3). In sum, Ing essentially contends that, because there is no express provision in the Hughes Trust declaring their intent to minimize taxes, the Appellants should not, as a matter of policy, be allowed to introduce extrinsic evidence to contradict the Hugheses' intent as demonstrated on the face of the trust.

Several jurisdictions that permit a legal malpractice action by a non-client subscribe to a rule that precludes the use of extrinsic evidence. Thus, where the testamentary instrument is valid on its face, these jurisdictions deny a non-client's malpractice cause of action. *See, e.g., Espinosa,* 612 So.2d at 1380; *Schreiner,* 410 N.W.2d at 683; *Noble,* 709 A.2d at 1276; *Mieras v. DeBona,* 452 Mich. 278, 550 N.W.2d 202, 209 (1996). However, several other jurisdictions do not follow such a rule. *See, e.g., Hale v. Groce,* 744 P.2d at 1289 (holding that the complaint sufficiently alleged a negligence claim where the will and related trust instrument did not include the plaintiff's gift); *Teasdale v. Allen,* 520 A.2d 295, 296 (D.C.1987); *Simpson v. Calivas,* 139 N.H. 1, 650 A.2d 318, 322 (1994).

In *Ogle v. Fuiten,* 102 Ill.2d 356, 80 Ill.Dec. 772, 466 N.E.2d 224, 227 (1984), the Illinois Supreme Court addressed the use of extrinsic evidence in a legal malpractice action brought by a non-client. There, the testators' nephew and niece brought a malpractice suit against an attorney who negligently drafted the testators' wills by failing to include the plaintiffs as beneficiaries. The court rejected the defendant's argument that the plaintiffs should be required to show, from the express terms of the will, that they were intended beneficiaries of the attorney-testator relationship to maintain a cause of action. *Id.* The court noted that the only remedy for intended beneficiaries who are negligently omitted from a testamentary document due to the fault of the drafting attorney is through malpractice. *Id.* Thus, the court distinguished a malpractice action by the non-clients from a collateral attack upon the will, noting "that if plaintiffs here are successful in their action, the orderly disposition of the testators' property is not disrupted, and the provisions of the wills, and the probate administration, remain unaffected." *Id.; see also Hamilton v. Needham,* 519 A.2d 172, 175 n. 7 (D.C.1986) (declining to adopt the "holding that liability to intended beneficiaries for legal malpractice can lie only if 'the testamentary intent as expressed in the will, is frustrated[,]' " because, where the will is silent as to the disposition of the testator's residuary estate, "a finding that [the testator] intended that it pass to [the beneficiary plaintiff] is in no way contradictory to, nor does it frustrate, the language of the will itself").

We are persuaded by the reasoning of *Ogle* and, therefore, adopt it in the present case. Here, the Appellants' cause of action would not prevent the enforcement of the trust document itself or vary its terms in contravention of the statute of wills. *See In re Christian's Estate*, 65 Haw. 394, 401, 652 P.2d 1137, 1142 (1982) (noting that courts will not "rewrite the will of the testator nor vary its provisions") (citing *Hawaiian Trust Company, Ltd. v. Wilder*, 46 Haw. 436, 444, 382 P.2d 61, 65 (1963)). Thus, by seeking to enforce the terms of the agreement between Ing and the Hugheses that were not fulfilled by the trust document in accordance with the Hugheses' intent, the Appellants could, if successful, recover from Ing, not the trust estate, the benefits they would have received under the Hughes Trust but for the allegedly negligent drafting by Ing. To limit a malpractice cause of action by a non-client to the face of the testamentary document that does not reflect the testator's true intent would render the recognition of a cause of action meaningless. *See Hamilton*, 519 A.2d at 175. In other words, "[t]o have any real meaning, our holding ... that [the Appellants] could bring this legal malpractice action must sanction as a corollary [their] use of evidence outside the will to support [their] claim.... Without the use of such extrinsic evidence, [their] case would be rendered unprovable." *Id.*

We emphasize, however, that our allowance of the use of extrinsic evidence in this legal malpractice action is wholly separate from cases in which courts interpret testamentary documents. In the latter instance,

> the cardinal rule to which all other rules must bend is that the intention of the testator controls and must be given effect unless it be contrary to some rule of law or against public policy.... Such intention, however, is to be ascertained from the language of the will itself as far as the language employed permits and resort should not be had to rules of construction unless and until from the ambiguity of the language used the intention of the testator cannot be fairly and reasonably ascertained.

*In re Campbell Estate*, 33 Haw. 799, 801–02 (1936) (citations omitted).

Moreover, imposition of a duty will not create the potential conflict of interest argued by Ing. As stated by the concurrence in *Mieras*:

> First, because beneficiaries of a will have no rights under the will before the testator's death, a disgruntled beneficiary's cause of action does not ripen until the death of the testator. "[M]erely drafting and executing a will creates no vested right in the legatee until the death of the testatrix." *Stowe v. Smith*, 184 Conn. 194, 198, 441 A.2d 81, [83] (1981). Second, the only obligation owed by the attorney to named beneficiaries is to exercise the requisite standard of care in fulfilling the intent of the testator as expressed in the will. An attorney would never face conflicting obligations to the testator and the beneficiaries by drafting a document that properly fulfills the testator's intent as expressed in that document. Further, the testator is always free to change the beneficiary of the will, and the displaced beneficiary will have no cause of action. As noted in the concurring opinion in *Guy, supra:*
>
> > The contract upon which the obligation arises required the scrivener to fulfill the intention of the testator expressed to him at the time of the drafting. The fact that the testator could subsequently change the proposed testamentary disposition is of no moment. The scrivener's obligation was to provide that which he undertook to do and the failure to do so constituted the breach which justified the recovery. [459 A.2d at 753 n. 2.]
>
> The duty owed to named beneficiaries is narrowly circumscribed and only requires the attorney to draft a will that properly effectuates the distribution scheme set forth by the testator in the will.

550 N.W.2d at 212 (Boyd, J., concurring, joined by Brickley, C.J., and Cavanagh, Riley, Mallett, and Weaver, JJ.) (some brackets original, some deleted, and some added). Thus, there is no conflict of interest under circumstances, such as the present case, where a beneficiary seeks to enforce an at-

torney's duty to fulfill his or her client's intent.

■ Ing contends that allowing the use of extrinsic evidence in the present case adversely affects the attorney-client privilege by forcing attorneys into a position where they would have to reveal a client's confidences in actions such as the instant case. We acknowledge that an underlying principle in the attorney-client relationship is that the attorney must maintain confidentiality of information relating to the representation, thereby encouraging full and frank communication with the attorney. *See* Hawai'i Rules of Professional Conduct Rule 1.6, cmt. 4 (1995). However, the attorney-client privilege is qualified and does not extend to a communication regarding whether an attorney has breached his or her duty to the client. *See* Hawai'i Rules of Evidence (HRE) Rule 503(d)(4).[11] Balancing the policy of full and frank communication fostered by the attorney-client privilege against the policy of preventing future harm by granting a cause of action in limited circumstances, we believe that, under the circumstances of the present case, the effect upon the privilege is minimal. We therefore believe that, on balance, the fact that an intended beneficiary is otherwise left without a remedy far outweighs such a minimal, adverse effect upon the attorney-client privilege. *But see Noble v. Bruce,* 709 A.2d at 1277–78. *Compare Sapp v. Wong,* 62 Haw. 34, 38, 609 P.2d 137, 140 (1980) (noting that, "[b]ecause the privilege works to suppress otherwise relevant evidence, the limitations which restrict the scope of its operation ... must be assiduously heeded").

Therefore, we hold that the Appellants have alleged facts that, if proven, would show that Ing owed them a duty of care to draft the Hughes Trust in accordance with the Hugheses' alleged intent to transfer their assets to the Appellants with the least taxation possible using an A–B trust plan.

■ Alternatively, the Appellants' complaint asserts a third party beneficiary theory against Ing. When reviewing a circuit court's dismissal under HRCP Rule 12(b)(6), this court must view the plaintiff's complaint in a light most favorable to him or her to determine whether the allegations could warrant relief under any alternative theory. *Touchette v. Ganal,* 82 Hawai'i 293, 298, 922 P.2d 347, 352 (1996). Here, the complaint alleged that a primary purpose of the contract between Ing and the Hugheses was to transfer the Hugheses' assets to the Appellants, as the intended beneficiaries, with the least taxation possible using an A–B trust plan. Additionally, the complaint alleged that Ing breached the contract by failing to fulfill the Hugheses' intent when he neglected to draft a provision that funded the bypass trust. Under the circumstances, recognition of a cause of action under a third party beneficiary theory may be appropriate to fulfill the intention of the contract. *See Guy,* 459 A.2d at 751. Thus, we hold that the Appellants have alleged facts in their complaint that, if proven, would show that they were the intended third party beneficiaries, entitling them to recovery.

Accordingly, based upon the foregoing, we hold that, because the Appellants' complaint sufficiently alleges a negligence claim in Count I and a third party beneficiary claim in Count II, the circuit court erred when it dismissed the complaint against Ing.

### B. Statute of Limitations Governing Legal Malpractice

In dismissing the Appellants' cause of action against Ing, the circuit court concluded that, even if the Appellants had stated a claim for which relief could be granted, the claim would be barred by the applicable six-year statute of limitations, HRS § 657–1(1) (1993).[12] The circuit court's ruling, which

---

11. HRE Rule 503(d)(4) provides that "[t]here is no [attorney-client] privilege under this rule ... [a]s to a communication relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer[.]"

12. HRS § 657–1 provides in relevant part:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
> (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting

was based upon its conclusion that the statute of limitations began to accrue when the trust was drafted, appears to have followed the traditional "occurrence rule," under which the accrual of the statute of limitations begins when the negligent act occurs or the contract is breached, which, in this case, would have been when the Hughes Trust was drafted.[13]

■■■ The Appellants urge this court to apply the "discovery rule" to their legal malpractice claim. Under the discovery rule, "a cause of action does not 'accrue,' and the limitations period therefore does not begin to run, until the plaintiff knew or should have known of the defendant's negligence." *Hays v. City and County of Honolulu*, 81 Hawai'i 391, 393, 917 P.2d 718, 720 (1996). Arguing in favor of the application of the discovery rule, the Appellants contend that their malpractice claim against Ing is not time-barred under HRS § 657-1(1) because accrual did not begin until Lloyd Hughes' estate incurred the adverse tax liability, *i.e.*, the date of death. If this court were to hold that the discovery rule applies to a legal malpractice claim arising in the estate planning context, Ing argues that Appellants should have discovered his alleged errors on either July 15, 1988, or February 17, 1989, when the Hugheses executed two amendments to their trust. Although several approaches exist to determine when a statute of limitations governing legal malpractice accrues,[14] the application of the discovery rule in the context of

estate planning would be consistent with current Hawai'i law governing medical malpractice.

### 1. Adoption of the Discovery Rule in Medical Malpractice

In *Yoshizaki v. Hilo Hospital*, 50 Haw. 150, 151, 433 P.2d 220, 221 (1967), this court addressed when "the statute of limitation begin[s] to run against a [medical] malpractice claim where the plaintiff did not know, nor acting reasonably could have been expected to know, that the defendant had negligently diagnosed an ailment[.]" After noting the varying approaches, such as the discovery rule, fraudulent concealment rule, continuous physician-patient relationship, and occurrence rule, the court concluded that the proper result would be to adopt the discovery rule to medical malpractice in Hawai'i. *Id.* at 152–54, 433 P.2d at 222–23.

We conclude that the statute does not begin to run until the plaintiff knew or should have known of the defendant's negligence. This conclusion is consistent with the legislative prescription to avoid constructions which would lead to absurd results. The injustice of barring the plaintiff's action before she could reasonably have been aware that she had a claim is patent. A basic reason underlying statutes of limitation is nonexistent; the plaintiff has not delayed voluntarily in asserting her claim. We realize that added burdens are placed on defendants by forcing them

---

further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 577A[.]

In *Higa v. Mirikitani*, 55 Haw. 167, 173, 517 P.2d 1, 5 (1973), this court held that legal malpractice claims, which are grounded in tort and contract, are governed by HRS § 657-1(1). Thus, although Appellants' complaint in the present case also alleges a negligence claim, under *Higa*, the six-year limitation period of HRS § 657-1(1) would still govern the negligence claim.

13. At the February 12, 1999 hearing, the circuit court's entire ruling regarding the statute of limitation was as follows:

[The court] think[s] that the statute of limitations initial period when it started is the date of the drafting of the trust. This isn't a will. It's a trust that was executed to manage assets

during the life of the parties as well as to provide disposition-avoidance of probate, I guess, and provide disposition at the time after [the Hugheses'] deaths.

Although the court's ruling did not specifically refer to any particular rule in deciding the issue, the strong inference is that the court relied upon the occurrence rule to conclude that the limitations period began to accrue at the drafting of the trust.

14. We recognize that other jurisdictions have employed one or more of the following approaches in legal malpractice actions: (1) the occurrence rule (2) the damage rule; (3) the continuous representation rule; (4) the fraudulent concealment rule; and (5) the discovery rule. *See generally* 2 Legal Malpractice §§ 21.9 through 21.15. We also note that the foregoing approaches are not necessarily mutually exclusive.

to defend claims with evidence that may be stale. We should not overlook the fact that the plaintiff must produce evidence sufficient to establish a prima facie case before the defendant is obliged to produce any evidence.

. . . .

We conclude that the conflicting policies are best reconciled by permitting the plaintiff the opportunity to prove that she neither knew or could reasonably have been expected to know of the defendant's alleged negligence until the date alleged in her complaint. If the legislature deems our reconciliation of these conflicting policies incorrect or wishes to place an outside limit on the time for bringing a malpractice action, it is free to do so. Until that time, however, we will not deny a plaintiff access to our courts for failure to assert such a claim if he asserts it within [the statute of limitations period] after he actually or constructively discovered it.

*Id.* at 154–55, 433 P.2d at 223–24 (footnotes omitted). Although *Yoshizaki* was decided in the context of medical malpractice, the court's analysis and application of the discovery rule apply equally to legal malpractice. *See* 2 Legal Malpractice § 21.14 at 836 (noting that the discovery rule in legal malpractice is a relatively modern doctrine employed to conform the rules of attorney liability with other professions) (citing *Mumford v. Staton, Whaley and Price*, 254 Md. 697, 255 A.2d 359 (1969) (adopting the discovery rule to malpractice claims against attorneys)).

## 2. Adoption of the Discovery Rule in Legal Malpractice

In *Higa v. Mirikitani*, 55 Haw. 167, 517 P.2d 1 (1973), this court was presented with the issue whether the "discovery rule," as announced in *Yoshizaki*, applied to the legal malpractice; however, we declined to ad-

dress the issue, having held the case to have been brought within the six-year limitations period under either rule. *Higa*, 55 Haw. at 174, 517 P.2d at 6. Since *Higa*, this court has not revisited the issue of when the statute of limitations begins to accrue in the context of legal malpractice, or more specifically, in a claim arising from the alleged negligent drafting of an inter vivos trust. We, therefore, look to other jurisdictions for guidance.

In *Neel v. Magana, Olney, Levy, Cathcart and Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971) (superceded by statute Cal.Civ.Proc.Code § 340.6 (West 1982), as recognized by, *Laird v. Blacker*, 2 Cal.4th 606, 7 Cal.Rptr.2d 550, 828 P.2d 691, 693 (1992)), the California Supreme Court denounced the occurrence rule's applicability to professional negligence. The court noted that professionals, including attorneys, possess specialized skills and knowledge not possessed by most clients, and thus, their clients cannot be expected to recognize an error. *Id.* 98 Cal.Rptr. 837, 491 P.2d at 431. The court further acknowledged the implications of its holding:

We recognize that the instant ruling will impose an increased burden upon the legal profession. An attorney's error may not work damage or achieve discovery for many years after the act, and the extension of liability into the future poses a disturbing prospect. On the other hand, when an attorney raises the statute of limitations to occlude a client's action before that client has had a reasonable opportunity to bring suit, the resulting ban of the action not only starkly works an injustice upon the client but partially impugns the very integrity of the legal profession.

*Id.* The California legislature subsequently amended the decision in *Neel* by statute. *See* Cal.Civ.Proc.Code § 340.6 (West 1982).[15]

---

**15.** Cal.Civ.Proc.Code § 340.6 provides:

Attorneys; wrongful professional act or omission; tolling of period

(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful

act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist:

(1) The plaintiff has not sustained actual injury;

(2) The attorney continues to represent the plaintiff regarding the specific subject matter

Florida, likewise, rejected the occurrence rule in legal malpractice actions and adopted the discovery rule.

> A careful examination of the decisions which adopt the [occurrence] rule ... fails to disclose the rationale which gives credence to and justifies the rule. The effect of the rule is to hold that an injured client must commence the action against his attorney for malpractice within the period of limitations after the negligent act is committed, even though the client is totally unaware of the fact that the negligent act giving rise to the cause of action had occurred. We find it impossible to rationalize how an injured client can be required to institute an action within a limited time after his cause of action accrues if he has no means of knowing by the exercise of reasonable diligence that the cause of action exists. It occurs to us that one should be held in fault for failing to timely exercise a right only if he knows, or by the exercise of reasonable diligence should have known, that such right existed. It is our view that the [occurrence] rule ... casts upon a client an unfair burden of knowing as much about the intricacies of the law as does the attorney whom he employs to protect his legal rights. In order to comply with the rule, the injured client would have to be sufficiently versed in the law to know exactly how and on which date his attorney committed an act of negligence in the prosecution or maintenance of the legal matters entrusted to his care in order that an action against the attorney might be instituted before being barred by the statute of limitations. We cannot agree with legal philosophy which adheres to such an unreasonable principle of law.

*Downing v. Vaine*, 228 So.2d 622, 625 (Fla. Dist.Ct.App.1969). California and Florida are joined by a majority of jurisdictions in applying the discovery rule to legal malpractice actions, either statutorily or judicially. *See* 2 Legal Malpractice § 21.14 at 839 n. 24 (4th ed. 1996 & Supp.1999) (citing the Federal Tort Claims Act and the following jurisdictions as having adopted the discovery rule: Alaska, Arizona, Arkansas, California, Colorado, Delaware, D.C., Florida, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Utah, Vermont, Washington, West Virginia, Wisconsin, and Wyoming).[16]

■■■ In deciding whether to apply the discovery rule in the context of estate planning, we consider the basic underlying policy of statutes of limitation, which is the prompt assertion of claims. *See Shibuya v. Architects Hawaii, Ltd.*, 65 Haw. 26, 39, 647 P.2d 276, 285 (1982). In this context, the discovery rule carries the onerous potential of protracted exposure to liability when viewed in conjunction with the six-year limitation period governing legal malpractice. *See* HRS § 657–1(1). However, the legal profession

---

in which the alleged wrongful act or omission occurred;

(3) The attorney willfully conceals the facts constituting the wrongful act or omission when such facts are known to the attorney, except that this subdivision shall toll only the four-year limitation; and

(4) The plaintiff is under a legal or physical disability which restricts the plaintiff's ability to commence legal action.

(b) In an action based upon an instrument in writing, the effective date of which depends upon some act or event of the future, the period of limitations provided for by this section shall commence to run upon the occurrence of such act or event.

**16.** We have only been able to discover one jurisdiction—Maine—that has returned to the occurrence rule by statute after judicial adoption of the discovery rule. *See* Me.Rev.Stat.Ann. tit. 14, § 753–A (Supp.1999) (providing, in relevant part, that "the statute of limitations shall start to run from the date of the act or omission giving rise to the injury and not from the discovery of the malpractice, negligence or breach of contract. ..."). Although Maine currently adheres to the occurrence rule in legal malpractice actions, the Maine legislature has statutorily exempted actions arising from the negligent drafting of a will from the application of the occurrence rule. *See* Me.Rev.Stat.Ann. tit. 14, § 753–A (Supp.1999) (specifying that a professional negligence action arising from the negligent drafting of a will is exempt from the occurrence rule).

may be relieved from such exposure through appropriate legislative action.[17] *Cf. Yoshizaki*, 50 Haw. at 155, 433 P.2d at 224 (stating that the legislature was free to amend the statute of limitation governing medical malpractice following the court's adoption of the discovery rule). Based upon the foregoing, we hold that the statute of limitations in a legal malpractice claim is governed by HRS § 657–1(1), the accrual of which is determined by application of the discovery rule.

■ Accordingly, if the Appellants succeed in proving that Ing owed a duty of care to them, as previously discussed, the trier of fact must determine the date by which the Appellants knew or should have known of their legal malpractice claim. *See, e.g., Dunlea v. Dappen*, 83 Hawai'i 28, 36, 924 P.2d 196, 204 (1996) (holding that the determination of when a woman discovered, or reasonably should have discovered, for statute of limitations purposes, that she was psychologically injured by childhood sexual assaults was a question of fact for the jury).

## C. *Standing in Accountant Malpractice*

The Appellants' negligence claim against Thayer alleges that, because Thayer prepared the estate tax returns with the objective of benefitting the Appellants, he had a duty to exercise reasonable care in carrying out his services. The complaint further alleges that Thayer breached his duty when he negligently prepared the estate tax returns by failing to utilize the unified credit and federal disclaimers available to Joan Hughes.

The Appellants' amended complaint advances the same allegations against Thayer but, alternatively, frames the action in terms of a third party beneficiary theory.

The circuit court granted summary judgment [18] in favor of Thayer as to the Appellants' negligence claim for accountant malpractice, noting that the requirements of Restatement (Second) of Torts § 552, entitled "negligent misrepresentation," had not been met as set forth in *Kohala Agriculture v. Deloitte & Touche*, 86 Hawai'i 301, 949 P.2d 141 (App.1997) (holding that negligent misrepresentation applied where an accounting firm negligently supplied information in business audits to non-client investors who relied upon the misinformation to grant loans to an overinflated business). The circuit court also granted summary judgment in favor of Thayer as to the Appellants' third party beneficiary claim because it found that the Appellants were incidental, not intended, beneficiaries of the implied contract between Joan Hughes and Thayer. We agree and therefore affirm the grant of summary judgment in favor of Thayer as to the third party beneficiary claim. We also agree with the circuit court's grant of summary judgment in favor of Thayer as to the negligence claim, but for the reasons set forth herein. We now address each *seriatim.*

### 1. Appellants' Third Party Beneficiary Claim

■ The Appellants' third party beneficiary claim alleged only that Joan Hughes

---

17. For example, in California, after the judicial adoption of the discovery rule, the California legislature enacted Cal. Civ.Proc.Code § 340.6, which not only codified the discovery rule, but also placed a time limit of four years on the application of the discovery rule in a legal malpractice action. *See* Cal.Civ.Proc.Code § 340.6(a); *see also Gordon v. Law Offices of Aguirre & Meyer*, 83 Cal.Rptr.2d 119, 70 Cal. App.4th 972 (1999) (noting the four-year time limit from the date of injury, regardless of discovery, espoused by § 340.6(a)). *Cf.* HRS § 657–7.3 (1993) (codifying the discovery rule and concealment rule and placing a six-year limitations period for medical malpractice, notwithstanding the application of the discovery rule).

18. Although the circuit court also granted the motion to dismiss as to Thayer, we note that Thayer presented matters outside of the pleadings in a memorandum submitted to the circuit court for consideration in response to the Appellants' motion in opposition to dismissal. However, it is unclear from the record whether the circuit court excluded the exhibits in ruling upon the motion to dismiss. *See* HRCP Rule 12(b). Therefore, as to Thayer, we treat the motion to dismiss as a motion for summary judgment pursuant to HRCP Rule 56 and apply the standard of review relating to summary judgment. *See id.* ("If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56[.]"); *see also Foytik v. Chandler*, 88 Hawai'i 307, 313–14, 966 P.2d 619, 625–26 (1998).

sought Thayer's services for the preparation of applicable tax returns, not estate planning advice.

In *Jewish Hospital v. Boatmen's National Bank*, 261 Ill.App.3d 750, 199 Ill.Dec. 276, 633 N.E.2d 1267 (1994), *appeal denied*, 157 Ill.2d 503, 205 Ill.Dec. 165, 642 N.E.2d 1282 (1994), the Appellate Court of Illinois addressed whether an accountant could be held liable to trust beneficiaries for adverse tax consequences under a third party beneficiary theory. The court allowed the trust beneficiaries to sue an accountant and attorney for negligently failing to give competent advice as to how to avoid unnecessary estate taxes when preparing the testamentary documents *during* the settlor's lifetime. *Id.* 199 Ill.Dec. 276, 633 N.E.2d at 1279. However, the court distinguished an accountant's post-mortem services for the administration of the trust and denied the beneficiaries' claim based upon such services. *Id.* 199 Ill.Dec. 276, 633 N.E.2d at 1279–80. The court explained the difference in the outcome as follows:

> [C]onstruing the evidence most favorably for plaintiffs, it is clear that [accountant] provided professional accounting services to the estate by way of assisting [executrix] in the preparation of the Federal estate tax return. Contrary to plaintiffs' assertions, [accountant] was not hired primarily to benefit plaintiffs or to give tax advice to the beneficiaries, but instead was hired to assist the Bank as coexecutor in the proper administration of the estate. Administration of this estate has so far required only that the trusts to the life beneficiaries be administered. Only after the death of the testator's sister will the residuary trust be paid to plaintiffs. We cannot say that the facts regarding the administration of the estate, even when construed most favorably for plaintiffs, show that the services of [accountant] were engaged to primarily benefit these plaintiffs.

*Id.* Thus, because an accountant's post-mortem services for the preparation of federal estate tax returns were not to benefit the beneficiaries, the court affirmed the summary judgment in favor of the accountants. *Id.* 199 Ill.Dec. 276, 633 N.E.2d at 1282.

Here, viewing the pleadings and the exhibits submitted by the parties, we must conclude that there is no genuine issue of material fact concerning the purpose for which Joan Hughes consulted Thayer. Thayer was retained to prepare the necessary estate tax returns following the death of Lloyd Hughes; there is no evidence that Thayer was consulted for estate planning advice. We are aware that, if Thayer had used the federal disclaimers and unified credit, as the Appellants claim he should have, the benefit to the Appellants would have been an increased inheritance. However, that benefit would have been merely incidental to Thayer's agreement to prepare the tax returns. Therefore, the Appellants are incidental, not intended, beneficiaries of the agreement between Thayer and Joan Hughes.

The Appellants attempt to distinguish *Jewish Hospital* based upon the existence of an Illinois statute that precludes accountant liability to persons with whom they are not in privity of contract [hereinafter, Illinois' accountant privity statute]. *See* Ill.Ann.Stat. ch. 225, para. 450/30.1 (Smith–Hurd 1998). However, Illinois' accountant privity statute does not preclude third party beneficiary and negligent misrepresentation claims by nonclients; rather, it merely adds the statutory requirement of a written notice. *See* Ill.Ann. Stat. ch. 225, para. 450/30.1(2) (providing that the statute does not apply if (1) the accountant was aware that a primary intent of his/her client was to benefit a particular person; and (2) the benefitted person notifies the parties in writing of his/her reliance upon the accountant's services). Under this exception, Illinois' accountant privity statute would not affect the persuasive reasoning of *Jewish Hospital* as applied to the present case. Thus, the Appellants' attempt to distinguish *Jewish Hospital* on the basis of Illinois' accountant privity statute fails.

The Appellants also cite *Kinney v. Shinholser*, 663 So.2d 643 (Fla.Dist.Ct.App.1995), *review denied*, *Moncrief v. Kinney*, 671 So.2d 788 (Fla.1996), in support of their third party beneficiary claim. In *Kinney*, summary judgment was awarded against a trust beneficiary who brought a third party beneficiary claim against an accountant for

failing to advise his mother of the adverse tax consequences associated with failing to exercise her power of appointment. *Id.* at 645. The Florida Court of Appeals reversed, holding that the third party beneficiary claim precluded summary judgment where the beneficiary's inheritance, as the sole residuary beneficiary of the trust and personal representative of the mother's will, were diminished as a result of the increased tax liability. *Id.* at 646–47 (citing *Machata v. Seidman & Seidman,* 644 So.2d 114 (Fla.4th DCA 1994), *review denied,* 654 So.2d 919 (Fla.1995) (recognizing Florida's adoption of Restatement Second of Torts § 552 and holding that accountant liability for negligence is expanded beyond persons in privity to include persons the accountant knows intend to rely on the accountant's audit for a specific purpose)). The holding in *Kinney* appears to have relied upon the general principle that an accountant may be liable to a third party, as announced by Florida precedent involving negligent misrepresentation based upon financial statements. *See id.* However, as previously discussed, the Appellants's are not "intended beneficiaries" of Thayer's services for the purposes of accountant malpractice. *See Jewish Hospital,* 199 Ill.Dec. 276, 633 N.E.2d at 1267–80. Thus, because we are unaware of the allegations made by the plaintiff in *Kinney,* and to the extent that *Kinney* conflicts with the reasoning in *Jewish Hospital* that a will/trust beneficiary is an incidental beneficiary of an accountant's post mortem services, we decline to adopt *Kinney's* interpretation. Accordingly, we hold that, because there were no genuine issues of material fact, the circuit court correctly granted summary judgment as to the third party beneficiary claim against Thayer.

### 2. Appellants' Negligence Claim

 The Appellants' complaint alternatively pled a negligence claim against Thayer. In the present case, the circuit court relied upon *Kohala Agriculture* to grant summary judgment in favor of Thayer; however, such reliance is misplaced.

In *Kohala Agriculture,* the ICA addressed whether an accountant could be held liable to a third party investor for negligently preparing several business audits relied upon by third party investors. *Kohala Agriculture,* 86 Hawai'i at 322, 949 P.2d at 162. In its analysis, the ICA surveyed the various approaches of jurisdictions outside of Hawai'i that have addressed the liability of an accountant to a third party for the alleged negligent preparation of audits and held "that an accountant may be held liable to third parties under [Restatement (Second) ] section 552(2) for negligence in the preparation of an audit report" that misrepresented the financial condition of several partnerships. *Id.* Accordingly, the ICA vacated the circuit court's grant of summary judgment against these particular plaintiffs because, when viewed in the light most favorable to them, there were sufficient facts, if proven, to establish their allegation of negligent misrepresentation. *Id.* at 328, 949 P.2d at 168.

 Here, the complaint did not allege negligent misrepresentation against Thayer, but rather alleged ordinary negligence. Negligent misrepresentation requires that: (1) false information be supplied as a result of the failure to exercise reasonable care or competence in communicating the information; (2) the person for whose benefit the information is supplied suffered the loss; and (3) the recipient relies upon the misrepresentation. *See Kohala Agriculture,* 86 Hawai'i at 323, 949 P.2d at 163; Restatement (Second) of Torts § 552. Although *Kohala Agriculture* stands for the proposition that an accountant may be held liable to a third party, we hold that the circuit court erred when it applied the analysis regarding negligent misrepresentation in the instant case because a claim of negligent misrepresentation had not been pled.

Inasmuch as negligent misrepresentation was not pled and, therefore, inapplicable to the present case, we must determine whether the Appellants, who are non-clients, may bring a professional malpractice claim grounded in tort against Thayer for his alleged negligent failure to utilize federal disclaimers and the unified credit. In so doing, the analysis of *Jewish Hospital* is again relevant.

Under a negligence claim, a duty is owed when, considering the policies favoring recovery against those limiting liability, the sum total of those policies leads the law to say that a particular plaintiff is entitled to protection. *See Lee,* 83 Hawai'i at 166, 925 P.2d at 336. Thus, a new duty will not be imposed upon members of society without a logical, sound, and compelling reason. *Id.* Similar to the reasons supporting a duty under legal malpractice, justification for holding accountants liable includes: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury; (5) the policy of preventing future harm; and (6) whether imposing liability imposed an undue burden upon the profession. *Cf. Lucas,* 15 Cal.Rptr. 821, 364 P.2d at 687–88.

Here, based upon the pleadings and admissible evidence submitted by the parties, we conclude that there is no genuine issue of material fact as to whether Joan Hughes retained the services of Thayer for the preparation of estate tax returns, not estate tax advice.[19] The Appellants were not the intended beneficiaries of the relationship between Joan Hughes and Thayer. Because the Appellants were incidental, not intended, beneficiaries, the Appellants do not satisfy the first factor under *Lucas.* Therefore, as a matter of law, Thayer was entitled to summary judgment.

Accordingly, we hold that the circuit court did not err when it granted summary judgment in Thayer's favor as to the third party beneficiary claim and, for the same reasons, affirm the grant of summary judgment in favor of Thayer as to the negligence claim.

## IV. CONCLUSION

Based upon the foregoing, we: (1) affirm the judgment in favor of Thayer; and (2) vacate the circuit court's March 3, 1999 order dismissing the complaint as to Ing. Accordingly, we remand this case for further proceedings as to Ing consistent with this opinion.

**19.** Thayer attached the Appellants' answers to interrogatories in a memorandum presented the circuit court. In the Appellants' answers, they stated that they "believed" that Thayer was also hired by Joan Hughes to provide estate planning advice. Although the Appellants' answers appear to create a genuine issue of material fact regarding whether Thayer was hired to provide estate planning advice, the answers are inadmissible because the Appellants were not competent to testify as to the nature of Thayer's employment. Inadmissible evidence cannot create a genuine issue of material fact. *Cf. Nakato v. Macharg,* 89 Hawai'i 79, 89, 969 P.2d 824, 834 (App.1998) ("An affidavit consisting of inadmissible hearsay cannot serve as a basis for awarding or denying summary judgment.") (citing HRCP 56(e) and *Rodriguez v. Nishiki,* 65 Haw. 430, 434 n. 3, 653 P.2d 1145, 1148 n. 3 (1982)); *Munoz v. Yuen,* 66 Haw. 603, 605, 670 P.2d 825, 826 (1983) (noting that a motion for summary judgment should be decided on the basis of admissible evidence).