**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000488
02-APR-2025
08:44 AM
Dkt. 45 SO**

NO. CAAP-21-0000488


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


DAVID TRACY, as co-trustee of the TRACY TREVILLYAN
REVOCABLE TRUST, and JANEEN TREVILLYAN, as co-trustee
of the TRACY TREVILLYAN REVOCABLE TRUST,
Plaintiffs-Appellants,
v.
CHOI & ITO, fka WAGNER, CHOI & VERBRUGGE,
CHUCK C. CHOI, ALLISON A. ITO,
Defendants-Appellees,
and
JOHN DOES 1-10, JANE DOES 1-10, DOE CORPORATIONS 1-10, and
DOE ENTITIES 1-10, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 1CC181000894)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Nakasone and McCullen, JJ.)

This appeal arises out of a grant of summary judgment
on plaintiff's claims of legal malpractice against its former

law firm on statute of limitations grounds.  We affirm in part and vacate in part.

Plaintiffs-Appellants David Tracy (**Tracy**), as co-trustee of the Tracy Trevillyan Revocable Trust, and Janeen Trevillyan, as co-trustee of the Tracy Trevillyan Revocable Trust (collectively, **Tracy Trust**) appeal from the August 10, 2021 "Final Judgment," entered by the Circuit Court of the First Circuit (**Circuit Court**).[1]  The Circuit Court granted two motions for partial summary judgment (**MPSJs**) filed by the Tracy Trust's former law firm, Choi & Ito, fka Wagner, Choi & Verbrugge, Chuck C. Choi, Allison A. Ito, John Does 1-10, Jane Does 1-10, Doe Corporations 1-10, and Doe Entities 1-10 (collectively, **the Choi Firm**), on the Tracy Trust's claims that the Choi Firm committed legal malpractice by (1) alleged excessive billing for legal work constituting a breach of the Choi Firm's fiduciary duty to the Tracy Trust (**excessive billing claims**), and (2) alleged negligent failure to investigate the availability of insurance for the defense of counterclaims against the Tracy Trust and alleged delayed tender of those claims to the insurer (**delayed tender claims**).  The claims in this case arose out of the Choi Firm's 2007 to 2011 representation of the Tracy Trust in a 2007 foreclosure litigation in the Circuit Court of the Third Circuit, in which the Choi Firm sued multiple defendants on behalf of the Tracy Trust over a real estate transaction (**2007 foreclosure litigation**).  The defendants in the 2007 foreclosure litigation asserted counterclaims against the Tracy Trust, which the Tracy Trust tendered to its multiple insurers.  The delayed tender claims stem from the Tracy Trust's efforts to obtain a defense and reimbursement for the legal fees incurred from one

---

[1]     The Honorable Dean E. Ochiai presided.

2

of its insurers, 21st Century Insurance (**21st Century** or **insurer**). The excessive billing claims stem from the legal invoices the Choi Firm billed to the Tracy Trust during its representation of the Tracy Trust for the 2007 foreclosure litigation.

On appeal, the Tracy Trust contends the Circuit Court erred by: **(1)** failing to apply the discovery rule and instead concluding the "statute of limitations for such claims accrues upon the termination of the representation between the lawyer and client" in granting both of the MPSJs; **(2)** granting the MPSJ on the excessive billing claims; **(3)** granting the MPSJ on the delayed tender claims; and **(4)** granting attorneys' fees and costs.[2]

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised, we resolve the contentions as follows.

On June 5, 2018, the Tracy Trust filed a Complaint against the Choi Firm alleging Breach of Fiduciary Duty (Count 1) for "billing the Trust unfair, unreasonable and unconscionable attorneys' fees and costs"; Professional Negligence (Count 2) for "failing to investigate, or advise the Trust to investigate, whether any insurance policies existed which might provide the Trust with a defense of . . . [c]ounterclaims"; and Unjust Enrichment (Count 3) for "invoices that contained excessive, unearned and unreasonable attorneys' fees and costs."

---

[2] We have restated and reordered the Tracy Trust's points of error for clarity.

### MPSJ on excessive billing claims

On August 23, 2020, the Choi Firm filed its MPSJ on the excessive billing claims, contending, inter alia, that assuming arguendo any billings were excessive, such claims were "time-barred" by the six-year statute of limitations in Hawaii Revised Statutes (**HRS**) § 657-1(1)[3] because the claims accrued when "Tracy Trust paid all of [the Choi Firm's] invoices months before the end of 2011." (Emphasis omitted.)

In opposition, the Tracy Trust argued that "triable issues of fact exist[ed]" as to whether the Choi Firm was "estopped from asserting the statute of limitations defense" because the Tracy Trust "reasonably relied on [the Choi Firm's] agreement to delay an audit so they did not discover the excessive billings until a later date." The Tracy Trust further contended that "a question of fact exist[ed] as to when [the Tracy Trust] reasonably discovered or should have discovered" the Choi Firm's excessive billing and "unnecessary and wasteful legal services."

The Choi Firm's reply pointed to legal authority that "the statute of limitations for claims involving legal billing begin[s] to run when a plaintiff receives the bill." (Italicization omitted.)

### MPSJ on delayed tender claims

On September 15, 2020, the Choi Firm filed its MPSJ on the delayed tender claims, contending that these claims were also time-barred by the six-year statute of limitations under HRS § 657-1(1). The Choi Firm argued that the claims "accrued

---

[3] HRS § 657-1 (2016), entitled "Six years," provides in pertinent part that the "following actions shall be commenced within six years next after the cause of action accrued, and not after: (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court[.]"

*long before* June 5, 2012" (six years before June 5, 2018 Complaint was filed) because "there were multiple ***accrual events*** which either put Tracy Trust on actual notice, or *should have* put Tracy Trust on notice, that it could have grounds to bring a claim for relief against [the Choi Firm], for alleged acts and omissions during the course of the [2007 foreclosure] litigation, which pertained to insurance and/or the defense of the counterclaims."

In opposition, the Tracy Trust argued that the evidence did not demonstrate that the Tracy Trust "knew or should have known that [the Choi Firm] should have tendered the [c]ounterclaims sooner" or that the Tracy Trust "understood the significance of a delay in tendering the [c]ounterclaims." The Tracy Trust claimed the Choi Firm "never advised [the Tracy Trust] that pre-tender attorneys' fees and costs are generally not reimbursed by insurers."

The Choi Firm's reply reiterated that even under the "outermost limits" of "the accrual events," the Tracy Trust "had all of the information necessary to allege the negligent act, the damage, and the causal connection between them."

**Circuit Court rulings on the MPSJs**

Following an October 6, 2020 hearing on both MPSJs, the Circuit Court concluded that the Tracy Trust's claims were time-barred by HRS § 657-1(1), and subsequently entered its October 29, 2020 order granting the MPSJ on the delayed tender claims (**MPSJ Order Re: Delayed Tender**) and November 5, 2020 order granting the MPSJ on the excessive billing claims (**MPSJ Order Re: Excessive Billing**).

The MPSJ Order Re: Delayed Tender disposed of Count 2 (Professional Negligence) and part of Count 3 (Unjust Enrichment), by concluding that the "insurance-based claims" in

5

the June 5, 2018 Complaint were "untimely as a matter of law"; and ruled that the statute of limitations began to run when the Choi Firm terminated its representation of the Tracy Trust on November 3, 2011, as follows:

> Furthermore, on November 3, 2011, the attorney-client relationship between the [Tracy Trust] and [the Choi Firm] in the 2007 . . . foreclosure litigation terminated, when [the Choi Firm] formally withdrew as counsel for the [Tracy Trust]. At the latest, the clock on the [Tracy Trust's] insurance-based claims against [the Choi Firm] began to run on November 3, 2011. . . . Instead, the [Tracy Trust] filed . . . their claims based upon alleged failure to investigate the availability of insurance for the counterclaims and alleged delay in tendering defense of the counterclaims, on June 5, 2018. The [Tracy Trust's] insurance-based claims are therefore untimely as a matter of law.

The MPSJ Order Re: Excessive Billing disposed of Count 1 (Breach of Fiduciary Duty) and part of Count 3 (Unjust Enrichment), by similarly concluding that the excessive billing claims were "untimely as a matter of law" based on the November 3, 2011 termination date of the attorney-client relationship, as follows:

> On November 3, 2011, the attorney-client relationship between the [Tracy Trust] and [the Choi Firm] . . . terminated, when [the Choi Firm] formally withdrew as counsel for the [Tracy Trust]. ~~At the latest,~~ The clock on the [Tracy Trust's] excessive billing claims against [the Choi Firm] began to run on November 3, 2011. . . . Instead, the [Tracy Trust] filed . . . their claims for excessive billing, on June 5, 2018. The [Tracy Trust's] claims for excessive billing, *inter alia*, are therefore untimely as a matter of law.

(Strikeout in original.)

On August 3, 2021, the Circuit Court entered its "Order Granting [the Choi Firm]'s Motion for Award of Attorneys' Fees and Costs as Prevailing Parties, filed July 2, 2021" (**Order Granting Fees and Costs**).

On August 10, 2021, the Circuit Court entered Final Judgment, and the Tracy Trust timely appealed.

6

We review an award of summary judgment de novo.  <u>Adams v. CDM Media USA, Inc.</u>, 135 Hawai‘i 1, 12, 346 P.3d 70, 81 (2015).

> Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties. The evidence must be viewed in the light most favorable to the non-moving party.

<u>Id.</u> (cleaned up).

### 1. The discovery rule, and not the termination of the attorney-client relationship, governed the accrual of both claims at issue.

The Tracy Trust argues that the Circuit Court erred in both of the MPSJ orders when it "failed to apply the discovery rule" and instead held the statute of limitations for both claims accrued upon the termination of the attorney-client relationship.  This argument has merit.

"[T]he statute of limitations in a legal malpractice claim is governed by HRS § 657-1(1), the accrual of which is determined by application of the discovery rule."  <u>Blair v. Ing</u>, 95 Hawai‘i 247, 267, 21 P.3d 452, 472 (2001).  In a subsequent legal malpractice case, the supreme court explained:  "Under Hawaii's discovery rule, the statute of limitations begins to run when the plaintiff discovers or should have discovered the negligent act, the damage, and the causal connection between the former and the latter."  <u>Thomas v. Kidani</u>, 126 Hawai‘i 125, 132, 267 P.3d 1230, 1237 (2011) (cleaned up).

7

Here, the Circuit Court erred by designating the November 3, 2011 date of termination of the attorney-client relationship as the date of accrual in both claims, without applying the discovery rule.[4] While the Circuit Court erred in this regard, as discussed infra, its ultimate conclusion that both claims in the June 5, 2018 Complaint were time-barred was nevertheless correct with regard to the delayed tender claims, but erroneous as to the excessive billing claims. See Prudential Locations, LLC v. Gagnon, 151 Hawaiʻi 136, 146, 509 P.3d 1099, 1109 (2022) (affirming summary judgment on different grounds than the trial court).

**2. The Circuit Court erred in granting summary judgment on statute of limitations grounds on the excessive billing claims.**

The Tracy Trust argues that it "reasonably relied" on the Choi Firm's "representations" in an August 1, 2011 email exchange that the Tracy Trust "could review the invoices at any time and without a time limitation"; and the Tracy Trust thus "paid the invoices without scrutinizing them in detail or having them reviewed by a professional auditor"; and it was "lulled" into taking no action because of this "tolling agreement." The Tracy Trust asserts the Circuit Court "should have found that a triable issue of fact existed whether the parties entered into [a] tolling agreement which equitably estopped" the Choi Firm from asserting the statute of limitations defense to the excessive billing claims.

The Choi Firm responds that a claim for "excessive" or "unreasonable" legal invoices "accrues (and the clock starts running), upon either the client's receipt of the billings *or*

---

[4]     In light of our resolution, we need not address the Tracy Trust's argument regarding the continuous representation rule.

upon the client's payment of the billings" (bolding and italicization omitted); there "was no tolling agreement" because the Choi Firm "never offered nor agreed -- to toll the time to commence a potential alleged legal malpractice claim"; and "[s]imply reserving more time to conduct an audit," and Tracy's "unilateral musings regarding the timing of an 'audit'" did "not constitute a tolling agreement or 'lulling' of the time to commence a claim."

The record contains Tracy's declaration that he "relied on [the Choi Firm's] representations that we could review the invoices at any time and without a time limitation," as follows:

> I told Defendants [(the Choi Firm)] on multiple occasions that we were not scrutinizing the invoices because it would be moot because Defendants assured us we would recover our attorneys' fees and costs in the litigation.  Defendant Choi confirmed to me in writing that we were free to review the invoices in detail at any time. I reasonably relied on Defendants' representations that we could review the invoices at any time and without a time limitation so we paid the invoices without scrutinizing them in detail or having them reviewed by a professional auditor.  Attached hereto as Exhibit "1" is a true and correct copy of an August 1, 2011 email string between Chuck Choi and myself confirming our agreement.

(Emphases added.)  Tracy pointed to the August 1, 2011 email attached to his declaration confirming the alleged agreement regarding the Tracy Trust's reservation of a future "right to audit" as follows:

> [(BY TRACY)] To confirm our phone conversation on July 27, 2011, the Trust reserves the right to audit any and all [Choi Firm] invoices at a future date.  This reservation has been expressed previously to you.  During our 7/27 phone call, you confirmed that the Trust could conduct any such review/audit at any time, including years down the road.  The Trust's rationale for delaying such an audit are [sic] the Trust's expectation that [Choi Firm] fees have been incurred due to the wrong doings of HET [(a defendant in the 2007 foreclosure litigation)] and should be recoverable in any settlement/judgement.  If this does not

9

occur, then the Trust will conduct the aforementioned audit.

(Emphases added.)  The Choi Firm responded as follows:

> David [Tracy],
>
> Thank you for the follow up.  You may consider this email as our acknowledgme [sic]  <u>As I have said, the client is always free to audit its attorneys' fees</u> and rai . . . . [sic]
>
> Please let me know if you have any questions[.]
>
> Chuck [Choi]

(Emphasis added.)[5]

The MPSJ Order Re: Excessive Billing concluded that the August 1, 2011 email exchange was "[t]he most compelling piece of evidence" establishing the Tracy Trust's "concerns" with the attorneys' fees, which the Circuit Court concluded did not "constitute[] a tolling agreement," as follows:

> The most compelling piece of evidence before this Court is the August 1, 2011 email string between David Tracy and Chuck Choi, Esq., *attached as Exhibit 1*  . . . . <u>This email string establishes that by August 1, 2011, David Tracy had concerns regarding Defendants' [(the Choi Firm)] attorneys' fees</u> . . . .  But even construing the facts in the light most favorable to the non-moving parties, the Court cannot find that Mr. Choi's 8/01/2011, 11:56 a.m. email to Mr. Tracy (*see Exhibit 1*, bates-numbered as Choi & Ito 010286) constitutes a tolling agreement. Rather, <u>this email is merely an acknowledgment</u> by Mr. Choi . . . , <u>that the clients are always free to audit his firm's attorneys' fees</u>.

(Emphases added.)

> It is well-settled that:
>
> a defendant cannot avail her or himself of the bar of the statute of limitations, if it appears that he or she has done anything that would tend to lull the plaintiff into inaction, and thereby permit the limitation prescribed by the statute to run against him or her. One invoking equitable estoppel must show that he or she has detrimentally relied on the representation or conduct of

---

[5]     The scan of the exhibit of the email exchange cut off a few words in Chuck Choi's response, which are noted by "[sic]."  No intact copy of the email appears in the record.

> the person sought to be estopped, and that such reliance was reasonable.

<u>Vidinha v. Miyaki</u>, 112 Hawai'i 336, 342, 145 P.3d 879, 885 (App. 2006) (cleaned up).

Here, we conclude that the August 1, 2011 email creates a genuine issue of material fact as to whether the parties' agreement to allow a "review/audit at any time" in the future, "including years down the road," tolled or equitably estopped the running of the statute of limitations for any future claims regarding the legal invoices. The email reflects Tracy's reservation of the right to freely "review/audit" the invoices "years down the road," and the Choi Firm's apparent acknowledgment that the Tracy Trust could do so because "the client is always free to audit its attorneys' fees . . . ." Viewed in the light most favorable to non-movant Tracy Trust, we cannot conclude that the Choi Firm's August 1, 2011 response did not "tend to lull the [Tracy Trust] into inaction" as a matter of law. <u>See</u> <u>id.</u> at 343, 145 P.3d at 886 (holding that the trial court erred in granting summary judgment to two married doctors, one of whom promised to provide financial assistance to a medical malpractice plaintiff and then ceased making payments after the statute of limitations had run, where the plaintiff represented that she relied on the doctor's payments in deciding not to pursue her claim). The issues of whether the Tracy Trust relied on the August 1, 2011 email in not pursuing its excessive billing claims sooner, and whether such reliance was reasonable, are "dispute[s] . . . for the trier of fact to decide at trial." <u>See</u> <u>id.</u> (noting that whether the plaintiff relied on the defendants' payments in not pursuing her claim against the defendants was "definitely in dispute.") (citation omitted).

We conclude that there were triable issues of material fact as to whether the excessive billing claims in the June 5, 2018 Complaint were time-barred; the Circuit Court erred in granting the MPSJ on these claims; and we vacate the MPSJ Order Re: Excessive Billing.  See Adams, 135 Hawai‘i at 12, 346 P.3d at 81.

### 3. The Circuit Court did not err in granting summary judgment on statute of limitations grounds on the delayed tender claims.

The Tracy Trust argues that "it was not until at least March 22, 2013 when the Tracy Trust first learned that 21st Century would not reimburse them for pre-tender fees" and the accrual of its claims from that date was "well within the six-year statute of limitations" for the filing of its June 5, 2018 Complaint.

The Choi Firm responds that "by the end of 2011," the Tracy Trust "knew that pre-tender fees and costs" incurred for the defense of the counterclaim would not be reimbursed.

Under the discovery rule, "one should be held in fault for failing to timely exercise a right only if he knows, or by the exercise of reasonable diligence should have known, that such right existed."  Blair, 95 Hawai‘i at 266, 21 P.3d at 471 (citation omitted).

Here, the record reflects that the defense of the counterclaims was tendered to the insurer on November 13, 2009. The insurer's reservation of rights letter accepted the tender only for certain counterclaims but continued to investigate whether those claims should be covered.  A September 29, 2010 letter from the insurer requested the Tracy Trust to "breakdown/breakout" its legal fees from the Choi Firm "from the date of the tender" to show only the post-tender legal fees

12

related to the defense of the "potentially covered claims." Significantly, the insurer's December 15, 2011 letter pertinently stated that:  "[t]he first notice of this loss and suit were given to 21st Century when the counter-claims were tendered on November 13, 2009"; the policy required the insured to promptly notify the insurer if the insured was "sued in connection with an Occurrence which may be covered under this policy"; the insurer "was not put on notice" of the subject counterclaim until the November 13, 2009 tender even though "[t]he original counter-claim was filed in October of 2007," two years before the insurer "was put on notice"; and "21st Century will only consider bills subsequent to the date of tender[,]" as follows:

> In August of 2007, you filed suit against Farrow.  A first amended complaint was filed by you in September of 2007 and in turn, Farrow filed a counter-claim.  That counter-claim was never tendered to 21st Century.  You then filed a second amended complaint against Farrow, HET and Alcoran in February of 2009.  In response, Farrow, HET and Alcoran filed the counter-claims for which you seek coverage.  The first notice of this loss and suit were given to 21st Century when the counter-claims were tendered on November 13, 2009.
>
> . . . .
>
> Further, the policy has certain conditions, that if breached result in a forfeiture of coverage.  The policy provides:
>
> 1. YOUR DUTIES AFTER A LOSS
>
> In the event of an Occurrence which is likely to involve this policy, or if you or any other Insured under this policy is sued in connection with an Occurrence which may be covered under this policy, you and any other involved Insured must do the following:
>
>> a. Notify us or our agent as soon as possible of the time, place and other Insured under this policy is sued in connection with an Occurrence which may be covered under this policy, . . . .

13

. . . .

> 21st Century was not put on notice of the Farrow counter-claim until November of 2009.  The original counter-claim was filed in October of 2007, two (2) years before 21st Century was put on notice.  The current counter-claims were filed in March and April of 2009.  If it is determined that the above policy condition was breached, coverage will be disclaimed.

. . . .

> 21st Century has not had the opportunity to review the billings submitted.  21st Century will only consider bills subsequent to the date of tender.  Further, 21st Century will only reimburse you for the reasonable costs and fees associated with the defense of the counter-claims, not for the prosecution of the suit . . . .

(Emphases added.)  Tracy's declaration in opposition to the MPSJ on the delayed tender claims did not address the December 15, 2011 letter from the insurer.[6]

Viewing the above evidence in the light most favorable to the Tracy Trust, we conclude that the December 15, 2011 letter informed the Tracy Trust of the consequences of delayed tender, and that its pre-tender legal fees would not be reimbursed.  Under the discovery rule, the delayed tender claims accrued at the latest by December 15, 2011--where the alleged negligent act (delayed tender), damage (reimbursement limited to post-tender legal fees), and causal connection between the two -- were evident from the insurer's December 15, 2011 letter.  See Thomas, 126 Hawaiʻi at 132, 267 P.3d at 1237.  The December 15, 2011 letter established that there were no disputed issues

---

[6]     Tracy's declaration claimed that the Choi Firm "never advised Plaintiffs that pre-tender attorneys' fees and costs are generally not reimbursed by insurers" and confirmed that after the Choi Firm withdrew in November 2011, "I [(Tracy)] became the primary contact with 21st Century." After mentioning the November 2011 withdrawal of the Choi Firm, Tracy's declaration discusses 2012 and 2013 correspondence with the insurer, but does not mention the December 15, 2011 insurer letter.

of material fact that the Tracy Trust knew or should have known of their claims for delayed tender at the point it received this letter.  See Blair, 95 Hawaiʻi at 266, 21 P.3d at 471.  Thus, the delayed tender claims in the June 5, 2018 Complaint were not timely filed within the six-year statute of limitations, and the Circuit Court did not err in granting the MPSJ on these claims.[7] See Adams, 135 Hawaiʻi at 12, 346 P.3d at 81.

**4. The Order Granting Fees and Costs is vacated.**

The Tracy Trust's sole challenge to the Order Granting Fees and Costs is that the Circuit Court erred in granting the MPSJs.  In light of our resolution affirming in part and vacating in part the orders granting the MPSJs, we vacate the August 3, 2021 Order Granting Fees and Costs.

For the foregoing reasons, we affirm in part and vacate in part the August 10, 2021 "Final Judgment," entered by the Circuit Court of the First Circuit.  We remand for further proceedings consistent with this Summary Disposition Order.

DATED:  Honolulu, Hawaiʻi, April 2, 2025.

On the briefs:

Jeffrey P. Miller,
for Plaintiffs-Appellants.

Jodie D. Roeca,
for Defendants-Appellees.

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

---

[7]     In light of our resolution, we need not address the Tracy Trust's challenge to the Circuit Court's conclusion that the Tracy Trust could not prove damages because "21st Century provided only a 'courtesy defense'" for which an "earlier" tender would not have mattered.

15